IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| KEVIN T. UPKINS, | |
| Plaintiff, | CIVIL ACTION NO.: 5:20-cv-140 |
| v. | |
| FNU COLEMAN; FNU WICKER; FNU TOOLE; and FNU SHEPHARD, | |
| Defendants. | |

**ORDER AND REPORT AND RECOMMENDATION**

This matter comes before the Court on Defendants Coleman, Wicker, Toole, and Shephard's Motion to Dismiss. Doc. 18. Defendants move to dismiss based on Plaintiff's failure to exhaust his available administrative remedies. This matter is fully briefed. Docs. 22, 28, 29. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS** Plaintiff's Complaint. Doc. 18. Because I have recommended dismissal of Plaintiff's Complaint, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*. Finally, I **DENY as moot** Plaintiff's Motion to Amend Requested Relief.[1] Doc. 23.

---

[1] Plaintiff's Motion to Amend Requested Relief simply requests to change the amount of monetary relief Plaintiff seeks and for what, as well as to add a request for injunctive relief. Doc. 23 at 1–2. While Plaintiff's Motion is unopposed, it is unnecessary to resolve to determine whether Plaintiff properly exhausted his available administrative remedies before bringing suit and, even if granted, would not impact Defendants' Motion to Dismiss. Thus, I decline to address Plaintiff's Motion to Amend Requested Relief any further.

**PROCEDURAL HISTORY**

Plaintiff, a Georgia Department of Corrections ("GDC") inmate at Ware State Prison ("WSP"), brought this suit, asserting claims under 42 U.S.C. § 1983. Doc. 1. After conducting frivolity review, the Court dismissed Plaintiff's claims for monetary damages against Defendants in their official capacities. Doc. 11. However, the Court permitted Plaintiff's due process claims under the Fifth and Fourteenth Amendment, access to the courts claims under the First Amendment, and cruel and unusual punishment claims under the Eighth Amendment to proceed. Id.

In their Motion and Reply, Defendants argue Plaintiff's claims against them should be dismissed because Plaintiff failed to properly exhaust his available administrative remedies prior to filing suit. Docs. 18-1, 28. Plaintiff filed a Response and Surreply, opposing Defendants' Motion to Dismiss. Docs. 22, 29.

**DISCUSSION**

**I.    Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how

special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion

defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.  Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche, 783 F.3d at 121; Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for suing, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required

to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding

exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1. This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of

Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III.   Applying Turner

#### A.   GDC Administrative Remedies

There is a grievance process at WSP which is applicable to and utilized for all inmates incarcerated with the GDC.  Doc. 18-2 at 1.  The GDC general grievance policies are set out in Standard Operating Procedure ("SOP") Policy Number 227.02.  Id.  The grievance process includes two steps inmates must follow.  At Step One, they must submit an original grievance.  At Step Two, inmates must submit a Central Office Appeals.  Id. at 2.  Under the Statewide Grievance Procedure, prisoners must file a grievance (i.e., complete Step One) no later than 10 days from the date he knew, or should have known, of the facts giving rise to grievance.  Id.  The Statewide Grievance Procedure also provides a grievance filed later than 10 days may be considered upon good cause.  Id.

Once a grievance is accepted, it will be processed, which includes a staff investigation and report, review by the Grievance Coordinator, and a recommendation to the Warden.  Id. at 3.  The Warden has 40 days to deliver the decision to the inmate.  Id.  After an inmate receives a Warden's decision on his grievance or the Warden's time for response has elapsed, an inmate may appeal that grievance by filing a Central Office Appeal within seven days.  Id.  However, that time limit may also be waived for good cause.  Id.  The Commissioner has 120 days after the submission of the appeal to respond to the inmate's appeal.  Doc. 18-3 at 15.

If an inmate submits a grievance, the grievance is logged into a central database and assigned a control number at or near the time the grievance is received.  Doc. 18-2 at 3.  An

inmate's grievance history shows all grievance filed by an inmate during his incarceration from any facility where the inmate was incarcerated.  Id. at 4.

### B.     Plaintiff Failed to Exhaust His Available Administrative Remedies

#### 1.     *Plaintiff's claims survive under <u>Turner</u> step one.*

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.  Plaintiff's allegations and Defendants' allegations plainly conflict.  Defendants assert Plaintiff failed to exhaust his administrative remedies.  Doc. 18-1.  However, in his Complaint, Plaintiff alleges he filed grievances related to his claims in this lawsuit but never received a response to those grievances.  Doc. 1 at 7–8.  For support, Plaintiff attaches two grievance receipts—one from October 2, 2020, and the other from October 13, 2020.  Id. at 14–15.  Further, Plaintiff asserts he attempted to appeal his grievances but was unable to because he did not timely receive responses from the Warden.  Doc. 22 at 1–2; Doc. 29 at 1–2.

Thus, under Plaintiff's allegations, he pursued available administrative remedies—filing a grievance at Step One—but the administrative remedies for a Central Office Appeal at Step Two were not available.  Proper exhaustion of Plaintiff's claims requires him to exhaust his administrative remedies by following GDC procedures.  However, exhaustion may be excused where it is unavailable.  Looking solely at Plaintiff's allegations, they are enough to survive a motion to dismiss for failure to exhaust his administrative remedies under the first step of the Turner test.  Plaintiff states he filed a grievance at Step One but was not able to file an appeal under Step Two due to the prison's failure to return his grievances.  Thus, the administrative remedies were unavailable to him.

### 2. Plaintiff's claims fail under Turner step two.

The parties' filings present a factual question under Turner step two. Specifically, the parties dispute whether Plaintiff properly filed and appealed his grievances and whether the appeals process was available to Plaintiff.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts." Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008). Nevertheless, a district judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies. Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)). The Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment, and courts in this district have applied that principle equally when making factual determinations under Turner step two. See Womack, 2008 WL 4104148 at *5–6 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)). Thus, to the extent Plaintiff relies upon his own self-serving allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Id. (citing Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

This analysis begins with the burden. Failure to exhaust is an affirmative defense which, like other affirmative defenses, puts the burden of proof squarely on defendants. See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541

F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial).  Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'"  Womack, 2008 WL 4104148, at *6 (quoting Jeffreys, 426 F.3d at 555).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue").  Here, both parties have submitted argument or evidence on the issue of exhaustion, demonstrating the parties have had ample opportunity to develop the record.

The materials in the record relied upon by the parties do not support Plaintiff's contention administrative remedies were unavailable to him, particularly his ability to appeal.  Plaintiff's grievance history shows that between the relevant dates—September 24, 2020, and November 10, 2020—Plaintiff filed two grievances.  Doc. 18-2 at 4; Doc. 18-4 at 1.  Plaintiff also states he filed two grievances related to his claims.  Doc. 1 at 7.

The first grievance, Grievance Number 316792, does not demonstrate proper exhaustion.  Doc. 18-4 at 1; Doc. 18-5 at 1.  In that grievance, Plaintiff complained about being placed in Tier I and the conditions of confinement in Tier I.  Doc. 18-5 at 1.  Plaintiff's grievance was rejected,

and Plaintiff did not file an appeal. Doc. 18-4 at 1. Plaintiff contends he did not appeal because he did not timely receive a response to his grievance. Doc. 1 at 7–8; Doc. 22 at 1–2. Indeed, Plaintiff did not receive a timely response. Plaintiff filed his grievance on September 25, 2020, but did not receive a response until December 1, 2020. Doc. 18-5 at 1–2. However, the fact Plaintiff did not receive a timely response does not excuse Plaintiff from appealing. First, an inmate may file a Central Office Appeal after the time allowed for the Warden's decision to be given to the inmate has expired. Doc. 18-3 at 14. Thus, Plaintiff could have appealed as soon as 40 days elapsed after he filed his grievance. Further, Plaintiff was still entitled to appeal within seven days of receiving the Warden's untimely response, but he simply elected not to appeal. Id. Thus, Plaintiff's Grievance Number 316792 does not demonstrate proper exhaustion. Bryant, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (citation omitted).

Similarly, Plaintiff's Grievance Number 316087 does not demonstrate proper exhaustion. Doc. 18-6 at 1. Plaintiff filed that grievance on October 2, 2020, and it was received on October 13, 2020. Id. In that grievance, Plaintiff complains of being placed in Tier I and having his legal materials confiscated. Id. On November 16, 2020, Plaintiff received notice his grievance was denied for containing more than one issue. Id. at 1, 7. That same day, Plaintiff appealed the denial of his grievance. Id. at 6. Plaintiff was notified his appeal was rejected on December 1, 2020. Id. a 2–3. While Plaintiff appealed this grievance, he filed suit before appealing or receiving a response to his appeal. Specifically, Plaintiff received a timely response on December 1, 2020, but filed this suit on November 10, 2020.[2] Thus, because Plaintiff filed suit

---

[2] Though the Court received Plaintiff's Complaint on November 12, 2020, Plaintiff's Complaint is signed November 10, 2020. Doc. 1 at 11. The applicable date for exhaustion purposes is the date the

11

before appealing, Plaintiff's Grievance Number 316087 does not demonstrate proper exhaustion.[3] Okpala, 248 F. App'x at 73 (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell, 2007 WL 201269 (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Finally, Plaintiff asserts he filed a grievance on October 13, 2020, related to this case. Doc. 1 at 14. While this grievance does not appear on Plaintiff's grievance history, it is signed by a grievance counselor. Id.; Doc. 18-4 at 1. Even accepting as true this grievance was filed and relates to the claims in this suit, this is not enough to demonstrate exhaustion. With the grievance being filed on October 13, 2020, the Warden's response was not due until November 22, 2020. However, Plaintiff filed this suit before—on November 10, 2020. Further, there is no indication Plaintiff appealed the October 13, 2020 grievance. Thus, for this grievance to constitute exhaustion, a juror would have to accept Plaintiff's self-serving allegations he filed the grievance, despite it not appearing on his grievance history, the grievance was responded to and then appealed in less than a month, despite the fact the Warden has 40 days to respond, and the Central Office Appeal has 120 days to respond. The Court finds Plaintiff's self-serving statements highly suspect given the evidence in the record. See Womack, 2008 WL 410418, at

---

plaintiff signed the complaint and not the filing date. Daker v. Owens, No. 6:14-CV-47, 2021 WL 725668, at *4 (S.D. Ga. Feb. 22, 2021) (citing Merilien v. Caldwell, No. 3:18-CV-056, 2020 WL 5763609, at *2 (S.D. Ga. Sept. 28, 2020) ("Concluding a prisoner 'brings' a civil action when he signs the complaint instead of when the clerk files the complaint is consistent with the purpose of § 1997e(a), which is to require exhaustion before a prisoner initiates litigation to avoid premature interruption of the administrative process.")).

[3]   To the extent Plaintiff argues he was prohibited from filing an appeal, this is plainly contradicted by the record. Plaintiff filed a timely appeal for Grievance Number 316087, which was both accepted and to which a response was provided. Doc. 18-6 at 1, 3, 6.

*6 (holding plaintiff's self-serving statements were inadequate to show administrative remedies were unavailable). More importantly, Plaintiff does not even allege he completed the administrative process for the October 13, 2020 grievance before filing his Complaint. Thus, Plaintiff's purported October 13, 2020 grievance cannot serve as the basis for proper exhaustion.

As explained above, the only explanation Plaintiff offers is he did not appeal because he did not receive a response within 40 days. Such an explanation is inadequate to excuse exhaustion. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS** Plaintiff's Complaint. Doc. 18.

IV.   **Leave to Appeal *in Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001));

see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion to Dismiss and Plaintiff's opposition thereto, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss. Doc. 18. Because I have recommended dismissal of Plaintiff's Complaint, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*. Finally, I **DENY as moot** Plaintiff's Motion to Amend Requested Relief. Doc. 23.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 13th day of June, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA